**Electronically Filed
Intermediate Court of Appeals
CAAP-17-0000048
30-DEC-2021
07:52 AM
Dkt. 92 MO**

NO. CAAP-17-0000048

IN THE INTERMEDIATE COURT OF APPEALS

OF THE STATE OF HAWAIʻI

MICHAEL RAY HUGHES, Petitioner-Appellant, v.
STATE OF HAWAIʻI, Respondent-Appellee

APPEAL FROM THE CIRCUIT COURT OF THE SECOND CIRCUIT
(S.P.P. NO. 16-1-0001(1); CR. NO. 89-0225(1))

MEMORANDUM OPINION
(By: Ginoza, C.J., Leonard and Wadsworth, JJ.)

The Circuit Court of the Second Circuit[1] (**Circuit Court**) denied the Hawaiʻi Rules of Penal Procedure (**HRPP**) Rule 40 petition filed on March 3, 2016, by self-represented Petitioner-Appellant Michael Ray Hughes (**Hughes**).  Hughes appeals from the "Findings of Fact, Conclusions of Law, and Order Dismissing HRPP Rule 40 Petition" (**Order**), entered on January 9, 2017.

On appeal, Hughes contends that the Circuit Court erred in denying his HRPP Rule 40 petition, because it contained allegations that if proven would have entitled Hughes to relief.

For the reasons explained below, we affirm.

## I.  Background

The following findings of fact by the Circuit Court are unchallenged on appeal and are thus binding on the parties and this court, see State v. Rodrigues, 145 Hawaiʻi 487, 494, 454 P.3d 428, 435 (2019):

---

[1]     The Honorable Rhonda I.L. Loo presided.

I.   FINDINGS OF FACT

. . . .

2.  On July 5, 1989, in CR 89-0225(1), the State charged [Hughes] via Complaint with Attempted Murder in the First Degree (Count One); Terroristic Threatening in the First Degree (Count Two); Felon in Possession of a Firearm (Count Three); Felon in Possession of Firearm Ammunition (Count 4); and Place to Keep Firearm (Count 5).

3.  On August 17, 1989, [Hughes]'s attorney filed a Motion to Extend Time to File Pre-Trial Motion and/or Continuing Trial.  After holding a hearing, the Circuit Court issued an order granting the motion.

4.  On February 20, 1990, the jury trial commenced before the Honorable John E. McConnell.  Following the close of evidence, both sides presented their closing arguments on March 1, 1990.  On the same day, the jury found [Hughes] guilty as charged on all counts.

5.  On June 22, 1990, the trial court sentenced [Hughes] to life imprisonment without the possibility of parole in Count One, Five years imprisonment on Counts Two and Five, and Ten years imprisonment on Counts Three and Four.

6.  On July 17, 1990, [Hughes] filed a Notice of Appeal.  On November 26, 1990, [Hughes] filed his Opening Brief in the Supreme Court of the State of Hawaii under S.C. No. 14689.  On February 4, 1991 the State filed its Answering Brief.  On February 14, 1991, [Hughes] filed his Reply Brief.  On May 28, 1991, the Hawaii Supreme Court issued its opinion affirming the convictions.

(Record citations omitted.)

The Hawaiʻi Supreme Court's above-referenced opinion in State v. Hughes, No. 14689 (Haw. May 28, 1991) (mem.), stated:

MEMORANDUM OPINION

Defendant-appellant Michael Ray Hughes appeals from his convictions of Attempted Murder in the First Degree, in violation of Hawaii Revised Statutes (HRS) § 707-701 (count 1); Terroristic Threatening in the First Degree, in violation of HRS § 707-716 (count 2); Felon in Possession of a Firearm, in violation of HRS § 134-7 (count 3); Felon in Possession of a Firearm Ammunition, in violation of HRS § 134-7 (count 4); and Place to Keep Firearm, in violation of HRS § 134-6 (count 5).

Defendant-appellant contends:  1) that the trial court committed reversible error in its instructions to the jury regarding the elements of counts 3, 4, and 5; and 2) that he had ineffective assistance of counsel.

We find that, although the instructions for counts 3, 4, and 5 did not include the requisite mental states for the charged offenses, this error was harmless and did not contribute to the convictions.  State v. Domingo, 69 Haw. 68, 733 P.2d 690 (1987).

2

On the issue of ineffective assistance of counsel, we find that defendant-appellant failed to show the withdrawal of a meritorious defense. Even assuming that his counsel rendered ineffective assistance, defendant-appellant's claim will only be upheld if he can show that counsel's errors resulted in either the withdrawal or substantial impairment of a potentially meritorious defense. State v. Smith, 68 Haw. 304, 309, 712 P.2d 496, 500 (1986).

Accordingly, the convictions of defendant-appellant are affirmed.

The Circuit Court's unchallenged findings of fact continue as follows:

7. On April 26, 2006, [Hughes] filed his first Petition to Vacate, Set Aside, or Correct Judgment, or Release Petitioner from Custody ("Petition No. 1"), in the Circuit Court of the Second Circuit.

8. On October 31, 2006, the Circuit Court filed its Findings of Fact, Conclusions of Law, and Order Denying Hughes' Petition No. 1. [Hughes] filed a notice of appeal on November 30, 2006. On July 31, 2008, the Hawaii Intermediate Court of Appeals (ICA) issued their Summary Disposition affirming the Circuit Court's denial of Petition No. 1. On December 22, 2008, the Hawaii Supreme Court rejected [Hughes]'s application for writ of certiorari.

This court's above-referenced summary disposition in

Hughes v. State, No. 28298, 2009 WL 2932762 (Haw. App. July 31, 2008) (SDO), stated in part:

**COL 5**
Ground one of Hughes's [Petition No. 1] claims ineffective assistance of trial counsel. Hughes previously raised the issue of ineffective assistance of trial counsel on direct appeal, and it was ruled on by the Hawai'i Supreme Court. The circuit court did not err in concluding that the issue of ineffective assistance of trial counsel had been either ruled upon in a previous appeal or waived. HRPP Rule 40(a)(3).

. . . .

**COL 15**
Hughes claimed his appellate counsel was ineffective because counsel did not raise every possible error that might show ineffective assistance of trial counsel. The circuit court noted that in [Petition No. 1], Hughes pointed to sixteen ways his trial counsel was ineffective. The circuit court concluded that many of Hughes's claims of ineffective assistance of trial counsel were raised in his direct appeal.

. . . .

The circuit court did not err in concluding that an informed and diligent criminal attorney would not have included on appeal the additional points Hughes claimed should have been raised.

Id. at *2-3 (citation omitted).

The Circuit Court's unchallenged findings of fact continue as follows:

> 9. On March 3, 2016, [Hughes] filed his present Rule 40 Petition [(**Petition No. 2**)] on the following grounds for why relief should be granted:
>
> Claim []1: [Hughes] alleges his state and federal constitutional rights were violated because he was prosecuted without the presentment or indictment of a grand jury.
>
> Claim []2: [Hughes] alleges the prosecution illegally amended the complaint in violation of HRPP Rule 7 and his constitutional rights.
>
> Claim []3: [Hughes] alleges that the District Court lacked proper jurisdiction over the complaint which contained the felony offenses.
>
> Claim []4: [Hughes] alleges that he was "illegally charged and prosecuted for the felony offense of Terroristic Threatening in the First Degree."
>
> Claim []5: [Hughes] alleges that his state and federal constitutional right to a speedy trial and HRPP Rule 48 were violated.
>
> Claim []6: [Hughes] alleges that the Hawaii Paroling Authority had no authority to set his minimum terms and that "multiple statutory term sentences (which are mandatory) occurring from multiple offenses which were based on single use of firearm from a single incident - were illegal, multiplicious, and prejudicial."
>
> Claim []7: [Hughes] alleges his state and federal constitutional rights were violated because the firearm charges are an included offense of [Hughes]'s attempted murder charge.
>
> Claim []8: [Hughes] alleges the Hawaii Rules of Evidence [(**HRE**)], Rule 404(b) was violated when the State presented evidence before the jury that [Hughes] was previously convicted of Assault in the Second Degree.
>
> Claim []9: [Hughes] alleges the amount of errors in this matter amount to cumulative error and the sheer volume of errors was prejudicial and mandates reversal of [Hughes]'s convictions.
>
> Claim []10: [Hughes] seeks reservation of any additional claims that may later arise from review of court transcripts or documents from the court record.
>
> 10. None of the claims listed in the above paragraph were raised in Petition No. 1.

On January 9, 2017, the Circuit Court entered the Order denying Petition No. 2 without a hearing. The Circuit Court determined that all of Hughes's claims, except for Claim 9,

4

alleging cumulative error, were waived "pursuant to HRPP Rule 40(a)(3) since [Hughes] had a reasonable opportunity to raise [these] issue[s] on direct appeal and/or in Petition No. 1." Additionally, the court determined as to each claim that "[e]ven when taken as true, [the facts alleged in Petition No. 2] do not entitle [Hughes] to relief under HRPP Rule 40."

On January 31, 2017, Hughes timely filed a notice of appeal.

## II.  Standards of Review

HRPP Rule 40(a)(3) provides, in relevant part:

> Rule 40 proceedings shall not be available and relief thereunder shall not be granted where the issues sought to be raised have been previously ruled upon or were waived. Except for a claim of illegal sentence, an issue is waived if the petitioner knowingly and understandingly failed to raise it and it could have been raised before the trial, at the trial, on appeal, in a habeas corpus proceeding or any other proceeding actually conducted, or in a prior proceeding actually initiated under this rule, and the petitioner is unable to prove the existence of extraordinary circumstances to justify the petitioner's failure to raise the issue.  There is a rebuttable presumption that a failure to appeal a ruling or to raise an issue is a knowing and understanding failure.

HRPP Rule 40(f) provides, in relevant part:

> [T]he court may deny a hearing if the petitioner's claim is patently frivolous and is without trace of support either in the record or from other evidence submitted by the petitioner.

A trial court's denial of an HRPP Rule 40 petition is reviewed de novo.  Dan v. State, 76 Hawaiʻi 423, 427, 879 P.2d 528, 532 (1994).

> As a general rule, a hearing should be held on a Rule 40 petition for post-conviction relief where the petition states a colorable claim.  To establish a colorable claim, the allegations of the petition must show that if taken as true the facts alleged would change the verdict, however, a petitioner's conclusions need not be regarded as true. Where examination of the record of the trial court proceedings indicates that the petitioner's allegations show no colorable claim, it is not error to deny the petition without a hearing.  *The question on appeal of a denial of a Rule 40 petition without a hearing is whether the trial record indicates that Petitioner's application for relief made such a showing of a colorable claim as to require a hearing before the lower court.*

Id. (quoting State v. Allen, 7 Haw. App. 89, 92-93, 744 P.2d 789,

5

792-93 (1987)).

## III.  Discussion

Hughes contends that the Circuit Court erred:  (1) in failing to file documents and motions submitted by Hughes, including various document requests and a motion to amend Petition No. 2; (2) in not providing Hughes with requested documents and transcripts without charge; (3) in determining that all but one of Hughes's claims were waived pursuant to HRRP Rule 40(a)(3); (4) in dismissing Claim 1, alleging that Hughes's state and federal constitutional rights were violated because he was prosecuted without the presentment or indictment of a grand jury; (5) in dismissing Claim 2, alleging that the complaint against Hughes in his underlying criminal case was illegally amended by the prosecution; (6) in dismissing Claim 3, alleging that the District Court of the Second Circuit (**District Court**) lacked jurisdiction over the complaint, which contained felony offenses; (7) in dismissing Claim 4, as Hughes "was charged and convicted for both terroristic threatening and firearm charge (HRS § 134-6)[,] whereby one charge is included within the other"; (8) in dismissing Claim 5, alleging that Hughes's constitutional right to a speedy trial and HRPP Rule 48 were violated; (9) in dismissing Claim 6, alleging that "multiple . . . minimum term sentences" that were determined by a "non-trier of fact" were illegal; (10) in dismissing Claim 7, alleging that Hughes's state and federal constitutional rights were violated because the "firearm charges are an included offense of [the] attempted murder charge"; (11) in dismissing Claim 8, alleging that "[HRE] Rule 404(b) was violated when the State admitted evidence before the jury that [Hughes] was previously convicted of Assault in the Second Degree"; and (12) dismissing Claim 9, alleging that cumulative errors require reversal of Hughes's convictions.[2/] Hughes also asserts "reserved" claims 10A (rule of lenity) and 10B (ineffective assistance of counsel).

---

[2/]    Hughes's points of error have been reordered, restated and condensed for clarity.

We group these contentions by subject matter and address each of them below.

## A.   Document and Filing Issues

Hughes contends that the Circuit Court violated HRPP Rules 42, 49, and 52 by "failing to file multiple documents, requests[,] and motions submitted by [Hughes] pertaining to and supporting the instant Petition," thereby denying Hughes "constitutionally protected access to the courts."  Hughes lists sixteen documents that the Circuit Court allegedly "failed to file and/or enter into the record[.]"

This argument lacks merit for two reasons.  First, Hughes has not identified "where in the record the alleged error [in failing to file documents] was objected to or the manner in which the alleged error was brought to the attention of the [Circuit C]ourt . . . ."  HRAP Rule 28(b)(4)(iii); see id. Rule 10(e)(1) ("If any differences arise as to whether the record truly discloses what occurred in the court or agency appealed from, the differences shall be submitted to and settled by that court or agency and the record made to conform to the truth.").  This basis for appeal was therefore waived.  See State v. Gonzalez, 128 Hawaiʻi 314, 317, 288 P.3d 788, 791 (2012) (noting that "the failure to properly raise an issue at the trial level precludes a party from raising that issue on appeal" (quoting State v. Kikuta, 125 Hawaiʻi 78, 89, 253 P.3d 639, 650 (2011)));  HRAP Rule 28(b)(4) (Points not presented in accordance with this section will be disregarded . . . .").

Second, even if we were to consider the asserted error, it appears that the sixteen listed documents are not part of the record, and Hughes has failed to demonstrate how the alleged failure to file any of the documents affected his substantial rights.  See HRPP Rule 52(a).  Nor can we determine the effect of the alleged error as Hughes has not provided a sufficient record for us to do so.  See HRAP Rule 11(a) ("It is the responsibility of [the] appellant to provide a record . . . that is sufficient to review the points asserted . . . .");  Bettencourt v. Bettencourt, 80 Hawaiʻi 225, 230, 909 P.2d 553, 558 (1995) ("The

law is clear in this jurisdiction that the appellant has the burden of furnishing the appellate court with a sufficient record to positively show the alleged error." (quoting Union Bldg. Materials Corp. v. The Kakaako Corp., 5 Haw. App. 146, 151, 682 P.2d 82, 87 (1984))).

Relatedly, Hughes contends that the Circuit Court erred in failing to file Hughes's motion for leave to amend Petition No. 2, and in not allowing amendment of Petition No. 2. But the purported motion, which Hughes states was not ruled upon, is not part of the record, and Hughes has not provided a sufficient record for us to evaluate his contention. We thus reject the asserted error. See Tradewinds Hotel, Inc. v. Cochran, 8 Haw. App. 256, 266, 799 P.2d 60, 66-67 (1990).

Hughes also contends that it was an abuse of discretion for the Circuit Court to "fail to provide pro se indigent [Hughes's] requested documents and transcripts" supporting Hughes's points of error on appeal "when those same documents and transcripts are availab[l]e to others who[] c[an] afford them."

Initially, it is not clear from the record exactly what documents and transcripts Hughes requested from the Circuit Court and when such requests were made. Hughes claims that he submitted "Ex Parte Motion[s] for Production of Documents[,]" dated November 24, 2015, and April 4, 2016, to the Circuit Court, and that these motions were not filed. These motions are not part of the record,[3/] and Hughes has failed to demonstrate how the Circuit Court's alleged failure to provide requested transcripts and documents affected his substantial rights. See HRPP Rule 52(a). Both the United States Supreme Court and the Hawaiʻi Supreme Court have held that a petitioner does not have a statutory or constitutional right to free transcripts to aid the petitioner in preparing a petition for collateral relief. See United States v. MacCollom, 426 U.S. 317, 323-28 (1976); Santiago v. Chan, No. 28885, 2007 WL 4396055, at *1 (Haw. Dec. 10, 2007)

---

[3/]    Hughes improperly attached copies of several documents to his reply brief, including an unfiled document entitled "Petitioner's Second Ex Parte Motion for Production of Documents," dated April 4, 2016, which does not identify any specific requested documents. See HRAP Rule 28(d). The documents attached to the reply brief are not part of the record on appeal. See HRAP Rules 10(e), 11(a).

(citing HRS § 802-7 (1993) and <u>MacCollum</u>, 426 U.S. at 323-28). Accordingly, Hughes has failed to demonstrate any error by the Circuit Court related to his purported request for transcripts and documents free of charge.

We also note that on April 10, 2017, Hughes filed a document in this appeal titled, "Appellant's Request for Preparation of Transcripts and Production of Documents (Fourth Request)" (**April 10, 2017 Motion**), by which Hughes requested the preparation of four transcripts and the production of thirteen documents from his related criminal case, Cr. No. 89-0225. Based on the appendices attached to the April 10, 2017 Motion, it appears that Hughes claims to have previously requested these same transcripts and documents from the Circuit Court. In the April 10, 2017 Motion, Hughes also requested that this court waive copy and production costs because the Circuit Court granted him leave to proceed *in forma pauperis* in the underlying case.

This court granted in part and denied in part the April 10, 2017 Motion by order entered on June 21, 2017, and granted in part and denied in part Hughes's July 7, 2017 motion for reconsideration by order entered on July 27, 2017. In summary, this court determined that "[w]ith respect to the documents requested in the [April 10, 2017] Motion, all but the June 16, 1989 complaint in district court, and *all* of the minutes from the criminal case are included in the record on appeal[.]" (Footnote omitted.) Regarding Hughes's request for the four transcripts: (1) this court determined that the June 20, 1989 transcript was already part of the record on appeal; (2) upon temporary remand, the Circuit Court clerk determined that no transcripts could be filed for the dates of July 12, 1989, and September 27, 1989, because no hearings occurred on those dates; and 3) pursuant to this Court's July 27, 2017 order, the June 22, 1990 transcript was filed in this appeal on August 23, 2017. This court's June 21, 2017 order made clear that Hughes "may request copies of all documents and transcripts that are included in the record on appeal by submitting a written request to the appellate clerk, who will notify [Hughes] of the associated costs

for copying and postage."[4/]

On this record, Hughes has not shown how the Circuit Court's alleged failure to provide any requested transcripts or documents affected his substantial rights.  Accordingly, his point of error is without merit.

## B.  Waiver of Claims

Hughes contends that the Circuit Court erred in determining that all of his claims, other than Claim 9, alleging cumulative error, were waived pursuant to HRPP Rule 40(a)(3).  Hughes argues that he submitted claims of illegal sentence, which pursuant to HRPP Rule 40(a)(3) are an exception to waiver; he raised a jurisdictional issue, which cannot be deemed waived; and he "cannot be held to answer for the failings and om[]issions of" his prior counsel.

Hughes is correct that Claim 6, as a claim of illegal sentence,[5/] was exempt from being waived under HRPP Rule 40(a)(3).  See Stanley, 148 Hawaiʻi at 502, 479 P.3d at 120; Flubacher, 142 Hawaiʻi at 114 n.7, 414 P.3d at 166 n.7 ("[A]ny analysis of waiver must be made in light of HRPP Rule 40(a)(3), which specifically exempts illegal sentence claims from being waived.").  Hughes is also correct that Claim 3 raises a jurisdictional issue that was not waived.  See Adams v. State, 103 Hawaiʻi 214, 220-21, 81 P.3d 394, 400-01 (2003) ("questions regarding subject matter jurisdiction may be raised at any stage of a cause of action" (brackets omitted) (quoting Amantiad v. Odum, 90 Hawaiʻi 152, 159, 977 P.2d 160, 167 (1999))).  Thus, the Circuit Court erred in ruling that Claims 3 and 6 were waived.  Nonetheless, we conclude that the Circuit Court was correct in

---

[4/]     This court's January 8, 2018 order also informed Hughes that, "[a]s a party to the appeal, [Hughes] may become a [Judiciary Electronic Filing System] user and access the record on appeal electronically without charge via the internet at www.courts.state.hi.us."

[5/]     "A sentence is illegal if the sentencing court lacks authority to impose it, or it is imposed in violation of the law."  Thomas v. State, CAAP-19-0000630, 2021 WL 1699887, at *1 n.2 (Haw. App. Apr. 29, 2021) (SDO) (citing Stanley v. State, 148 Hawaiʻi 489, 502, 479 P.3d 107, 120 (2021); Flubacher v. State, 142 Hawaiʻi 109, 110-11, 414 P.3d 161, 162-63 (2018); Moananu v. State, CAAP-18-0000447, 2020 WL 3034708, *6 (Haw. App. June 5, 2020) (mem.)).

ruling that Claims 3 and 6 failed to state colorable claims, as discussed below in sections C and D.

Hughes also argues that he "cannot be held to answer for the failings and om[]issions of the counsel(s) appointed by the State of Hawaii whom previously represented [Hughes] (nor any other prior counsel)." Hughes did not present an ineffective assistance of counsel claim in Petition No. 2. While Hughes attempts to raise an ineffective assistance claim for the first time on appeal in the form of his "reserved claim" 10(B), we do not consider this claim for the reasons discussed below in section F.[6]

Even if we were to consider Hughes's argument regarding his prior counsel, Hughes asserts only generally that his counsel "either [did] not know[] the law, f[ound] the task too labor[i]ous, or flat out den[ied] the wishes of their client." Such general arguments do not establish extraordinary circumstances preventing waiver. See HRAP Rule 40(a)(3); Dan, 76 Hawaiʻi at 427, 879 P.2d at 532 ("General claims of ineffectiveness are insufficient and every action or omission is not subject to inquiry." (quoting Briones v. State, 74 Haw. 442, 462-63, 848 P.2d 966, 976 (1993))). Hughes has not asserted specific errors or omissions that resulted in the withdrawal or substantial impairment of a meritorious defense. See Dan, 76 Hawaiʻi at 427, 879 P.2d at 532.

Thus, Hughes has not established the existence of extraordinary circumstances to justify his prior failure to raise issues that he now raises in Petition No. 2, which could have been raised in his direct appeal or Petition No. 1. Accordingly, the Circuit Court did not err in ruling that Claims 1, 2, 4, 5, 7, 8, and 10 were waived.[7]

---

[6] We also note that Hughes previously raised the issue of ineffective assistance of trial counsel on direct appeal, which was ruled on by the supreme court, and in Petition No. 1, which was ruled on by this court. See Hughes, 2008 WL 2932762, at *2. Hughes also raised the issue of ineffective assistance of appellate counsel in Petition No. 1, which was ruled on by this court. Id. at *3.

[7] With respect to Claim 4, Hughes argues in part that Hawaiʻi law "prohibits separate sentences for both an offense and an offense included therein." However, Claim 4 was not presented as a claim of illegal sentence in Petition No. 2. Similarly, Claim 7, which asserted that "[Hughes's]

11

## C.  Jurisdictional Issue

Hughes contends that the Circuit Court erred in dismissing Claim 3.  Hughes argues that the District Court, which held a preliminary hearing in Hughes's underlying criminal case, lacked "jurisdiction [over] a felony offense - and thereby, the ability to allow an amendment (by jurisdiction) of a charged felony offense."

In dismissing Claim 3, the Circuit Court stated, in relevant part:

> 15.  **Claim []3:**  The Court concludes Claim []3 does not entitle [Hughes] to relief under HRPP Rule 40.  [Hughes] alleges that the District Court lacked proper jurisdiction over the complaint which contained the felony offenses.
>
> . . . .
>
> 17.  Even if Claim []3 had not been waived, the claim is patently frivolous and without a trace of support in the record.  The procedures of HRS §§ 801-1, 806-6, 806-8 and HRPP 5(c) and 7(h) established proper jurisdiction.  More specifically, a complaint containing the charges against defendant was filed in District Court; the District Court, after a preliminary hearing, found probable cause to believe that defendant had committed the charged offenses and committed him to the Circuit Court for further proceedings; and the complaint, as well as the order committing defendant to the Circuit Court, were attached to the pleading filed in the Circuit Court. . . .  Accordingly, [Hughes] fails to state a colorable claim in Claim []3.

In 1989, when Hughes was charged, HRPP Rule 5(c)[8/]

---

firearm charges are an included offense of [Hughes's] attempted murder charge," was not presented as a claim of illegal sentence in Petition No. 2. The crux of Hughes's argument raises an issue on the merits, not the sentence, see Thomas, 2021 WL 1699887, at *1 n.2, and the Circuit Court did not err in concluding that Claims 4 and 7 had been waived.  Moreover, Claims 4 and 7 each fail to state a colorable claim.

[8/]     At the time of the offenses, HRPP Rule 5(c) (1988) provided, in relevant part:

> **Rule 5.  PROCEEDINGS BEFORE THE DISTRICT COURT**
>
> . . . .
>
> **(c) Felonies.**  In the district court, a defendant charged with a felony shall not be called upon to plead, and proceedings shall be had in accordance with this section (c).
>
> . . . .
>
> (6) *Disposition*.  If from the evidence it appears that there is probable cause to believe that the felony charged, or an included felony, has been committed and that the

empowered the district court to conduct a preliminary hearing to determine whether there was probable cause to commit a defendant charged with a felony to answer in the circuit court. Relatedly, HRPP Rule 7(b)(1)[9] provided that "[a] felony may be prosecuted by a complaint . . . if with respect to that felony the district judge has found probable cause at a preliminary hearing and has committed the defendant to answer in the circuit court pursuant to Rule 5(c) of these rules[.]" Further, HRPP Rule 7(h) required that such a complaint be filed initially in the district court when "none of the three conditions set forth in Rule 7(b) . . . has yet occurred[.]"

---

defendant committed it, the court shall forthwith commit him to answer in the circuit court; otherwise, the court shall discharge him.

[9] At the time of the offenses, HRPP Rule 7(b) and (h) (1988) provided, in pertinent parts:

**Rule 7. THE INDICTMENT, COMPLAINT AND ORAL CHARGE**

. . . .

**(b) When Felony May Be Prosecuted by Complaint.** A felony may be prosecuted by a complaint under any of the following 3 conditions:

(1) if with respect to that felony the district judge has found probable cause at a preliminary hearing and has committed the defendant to answer in the circuit court pursuant to Rule 5(c) of these rules;

(2) if, pursuant to Rule 5(c)(2) of these rules, the defendant has waived in open court his right to a preliminary hearing; or

(3) if, pursuant to Rule 7(c) of these rules, the defendant has waived in open court the right to an indictment.

. . . .

**(h) Court in Which Charge Filed.**

(1) An indictment shall be filed in the circuit court.

(2) A complaint may be filed in either the district or circuit court; provided that a complaint shall not be filed initially in the circuit court when it charges:

(i) a felony, and none of the three conditions set forth in Rule 7(b) of these rules has yet occurred, or

(ii) only an offense or offenses other than a felony.

Here, pursuant to HRPP Rule 7(b) and (h), a complaint containing the felony charges against Hughes was filed in the District Court. Pursuant to HRPP Rule 5, the District Court, after a preliminary hearing, found probable cause to believe that Hughes had committed the charged offenses and committed him to the Circuit Court for further proceedings. Accordingly, the Circuit Court correctly ruled that the District Court had jurisdiction for this purpose.

Hughes argues that the District Court "was without jurisdiction of the felony offense amended[,]" pursuant to HRS §§ 604-8 and 701-113. However, we do not read these statutes as depriving the district court of jurisdiction to conduct a preliminary hearing in accordance with HRPP Rule 5(c). See State v. Wilson, 55 Haw. 314, 316-17, 519 P.2d 228, 230 (1974) (noting that under HRS § 604-8, the district court did not have jurisdiction to try a felony, but under former Hawaiʻi Rules of Criminal Procedure Rule 5(d)(2), the district court was "empowered . . . to conduct a preliminary hearing, to hear evidence, and to discharge a defendant should probable cause not appear from the evidence adduced"). In addition, HRPP Rule 7(f)[10/] permitted the amendment of the complaint to correct a typographical error, and at the start of the preliminary hearing, Hughes confirmed that he had no objection to the amendment.

Accordingly, the Circuit Court correctly ruled that Hughes failed to state a colorable claim in Claim 3.

**D.  Illegal Sentence Issues**

Hughes contends that the Circuit Court erred in dismissing Claim 6, and that he was "[s]entenced [i]llegally to [m]ultiple [m]inimum [t]erms."

In dismissing Claim 6, the Circuit Court stated, in relevant part:

> 28.  **Claim []6:**  The Court concludes Claim []6 does
> not entitle [Hughes] to relief.  In Claim []6, [Hughes]

---

[10/]  At the time of the offenses, HRPP Rule 7(f) stated:  "The court may permit a charge other than an indictment to be amended at any time before verdict or finding if no additional or different offense is charged and if substantial rights of the defendant are not prejudiced."

14

alleges that the Hawaii Paroling Authority ("HPA") had no authority to set his minimum terms and that "multiple statutory term sentences (which are mandatory) occurring from multiple offenses which were based on single use of firearm from a single incident - were illegal, multiplicious, and prejudicial."

. . . .

30. Even if Claim []6 had not been waived, the claim is patently frivolous and without a trace of support in the record. First, as [Hughes] has already served the minimum terms on the firearms convictions, the matter is moot. Further, the HPA has proper authority to set minimum terms according to law. See Williamson v. Hawaiʻi Paroling Authority, 97 Hawaiʻi 183, 35 P.3d 210 (2001). Finally, [Hughes]'s claim that his sentence is illegal due to "multiple sentences" for a "single use of firearm" is unavailing. As discussed in Claims []4 and []7, [Hughes]'s sentence involving multiple firearm convictions does not violate the prohibition against double jeopardy. Accordingly, [Hughes] fails to state a colorable claim in Claim []6.

On appeal, Hughes argues that the issue of his "illegal minimum term sentences" is not moot, because he continues to experience "prejudice" in matters of housing, custody level, classification, and available programming as a result of the sentences. His argument has merit, as "[c]riminal convictions have collateral consequences even after sentences have been served." State v. Tierney, 127 Hawaiʻi 157, 172, 277 P.3d 251, 266 (2012) (citing Sibron v. New York, 392 U.S. 40, 55-56 (1968), for the proposition: "Although [a defendant's prison] term has been served, the results of the conviction may persist. Subsequent convictions may carry heavier penalties; civil rights may be affected. As the power to remedy an invalid sentence exists, a defendant is entitled to an opportunity to attempt to show that his conviction was invalid."). We conclude that the Circuit Court erred in ruling that, "as [Hughes] has already served the minimum terms on the firearms convictions, the matter is moot."

However, the Circuit Court correctly determined that the HPA had authority to set Hughes's minimum terms. In Williamson, the supreme court discussed the broad mandate granted to the HPA pursuant to HRS § 706-669 (1993), noting that "the HPA has the 'exclusive authority to determine the minimum time which must be served before the prisoner will be eligible for parole'" and that "[t]he legislature apparently intended to grant the HPA

15

broad discretion in establishing minimum terms."  97 Hawaiʻi at 189, 35 P.3d at 216.

Hughes contends that "the trier of fact (jury) did not determine [Hughes's] multiple minimum term sentences[.]"  Below, Hughes relied on Apprendi v. New Jersey, 530 U.S. 466 (2000), in arguing that the trier of fact and not the HPA should have determined his minimum term sentences.

Hughes's reliance on Apprendi is misplaced for two reasons.  First, the Hawaiʻi Supreme Court has held that "Apprendi does not apply retroactively in this jurisdiction to cases on collateral attack."  State v. Gomes, 107 Hawaiʻi 308, 314, 113 P.3d 184, 190 (2005).  Second, Apprendi does not apply to the determination of minimum term sentences in these circumstances.  See Draizen v. State, No. CAAP-12-0000708, 2015 WL 775031, at *2 (Haw. App. Feb. 24, 2015).  Rather, in Apprendi, the Supreme Court held that "other than the fact of a prior conviction, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt."  Gomes, 107 Hawaiʻi at 312, 113 P.3d at 188 (brackets omitted) (quoting Apprendi, 530 U.S. at 490).  Here, none of Hughes's sentences exceeded the applicable statutory maximum.  Thus, Apprendi does not apply, and the Circuit Court did not err in concluding that the HPA had authority to set Hughes's minimum terms.

Hughes also alleged in Claim 6 that his sentence was illegal due to "[m]ultiple . . . sentences" for the "single use of a firearm."  However, on appeal, he presents no argument on this allegation, and the issue is thus deemed waived.  See HRAP Rule 28(b)(7); Rapozo v. State, 150 Hawaiʻi 66, 86, 497 P.3d 81, 101 (2021).

Accordingly, the Circuit Court correctly ruled that Hughes failed to state a colorable claim in Claim 6.

**E.  Cumulative Error**

Hughes contends that the Circuit Court "committed a massive amount of structural and prejudicial error which only furthers and supports [Hughes's] Claim 9 of and pertaining [to]

'Cumlative Error[.]'" (Emphasis omitted.)

In dismissing Claim 9, the Circuit Court stated:

> 40. **Claim []9:** The Court concludes Claim []9 does not entitle [Hughes] to relief. In Claim []9, [Hughes] alleges the amount of errors in this matter amount to cumulative error and that the sheer volume of errors resulted [in] prejudice and therefore mandates reversal of [Hughes]'s convictions. As indicated *supra*, no errors have been found and [Hughes]'s Claims []1 through []8 fail to state a colorable claim. Therefore, Claim []9 also fails to state a colorable claim.

For the reasons previously discussed, Hughes's claims either have been waived or fail to state a colorable claim. Accordingly, the Circuit court correctly ruled that Hughes failed to state a colorable claim in Claim 9.

## F. "Reserved Claims"

Hughes presents additional "Reserved Claims" 10(A) and 10(B) in the appendices of his Opening Brief, identified as "Exhibit C" and "Exhibit D," respectively. Specifically, Hughes argues that: 1) his sentence violates the Rule of Lenity; and 2) pre-trial counsel was ineffective.

Hughes's reserved claims violate HRAP Rule 28(a), which provides in relevant part that "an opening or answering brief shall not exceed 35 pages[.]" HRAP further states: "If a brief raises ineffective assistance of counsel as a point of error, the appellant shall serve a copy of the brief on the attorney alleged to have been ineffective." HRAP Rule 28(a). Hughes's reserved claims 10(A) and 10(B) do not conform with HRAP Rule 28(a), as they are included in the appendices of the opening brief, on pages 58 and 70, respectively, well beyond the brief's 35-page limit. Further, the record contains no indication that Hughes served his ineffective assistance of counsel claim upon counsel whom he claims was ineffective, as required by HRPP Rule 40(f) and HRAP Rule 28(a).

Additionally, the record contains no indication that Hughes raised Claims 10(A) and 10(B) in the Circuit Court. We do not consider these claims, which were raised for the first time on appeal. See Rapozo, 150 Hawaiʻi at 86, 497 P.3d at 101 (citing Dan, 76 Hawaiʻi at 431, 879 P.2d at 536).

## IV.  Conclusion

For the reasons discussed above, the Findings of Fact, Conclusions of Law, and Order Dismissing HRPP Rule 40 Petition, entered on January 9, 2017, in the Circuit Court of the Second Circuit, is affirmed.

DATED:  Honolulu, Hawaiʻi, December 30, 2021.


On the briefs:

Michael Ray Hughes,
Self-Represented Petitioner-
Appellant

Peter A. Hanano,
Deputy Prosecuting Attorney,
County of Maui,
for Respondent-Appellee

/s/ Lisa M. Ginoza
Chief Judge


/s/ Katherine G. Leonard
Associate Judge


/s/ Clyde J. Wadsworth
Associate Judge